IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| VASU HOLDINGS, LLC, §<br>　　　　*Plaintiff,* §<br>　v. §<br>　§<br>SAMSUNG ELECTRONICS CO., LTD., §<br>SAMSUNG ELECTRONICS AMERICA, §<br>INC., §<br>　　　　*Defendants.* § | Case No.  2:24-cv-00034-JRG-RSP |

### MEMORANDUM ORDER

Before the Court is Defendant's Motion to Strike the Opinions of Vasu's Survey Expert, Dr. Andres Groehn. **Dkt. No. 123**. For the reasons discussed below, the Motion is **DENIED**.

### I.     BACKGROUND

Defendant Samsung seeks to strike portions of the report of Plaintiff's survey expert Dr. Andres Groehn. Dr. Groehn's report seeks to assign an economic value to the "increased battery life and the Wi-Fi/Cellular network transition" feature of the accused products. Dkt. No. 124-2 at ¶ 15. Dr. Groehn's Report notes that his analysis requires an assessment of consumer demand to "quantify demand for Samsung's products" with and without these features. *Id.* Dr. Groehn's report then assigns a dollar value to these features. *Id.*

Dr. Groehn's report surveys approximately 1000 people on various smartphone features, including manual/automatic network switching and increased battery life. Dr. Groehn then applied a statistical model to the data, whereby he compared the price of competing smartphones with and without the polled features, to create an estimated value for each feature. The network switching feature's value was based on the feature's estimated battery savings, and the amount Dr. Groehn estimated consumers would pay for this increased battery life. *Id.* at ¶ 125-26. Dr. Groehn's report does not assess infringement or invalidity of the asserted patents. *Id.* at ¶ 10.

1

Dr. Groehn's report is relevant to the damages calculations for three asserted patents, U.S. Patent Nos. 8,886,181 ("the '181 Patent"), 10,368,281 ("the '281 Patent") and 10,419,996 ("the '996 Patent"). The '181, '281, and '996 Patents teach different ways to switch between different wireless networks. For example, the '181 Patent Claim teaches a method of simultaneously establishing connection to a second, stronger, network without losing connection to the first. Similarly, the '281, and '996 Patents include timers to "wake up" the second antenna after a specified period of time, and if certain conditions are met.

## II.  LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be

helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

### III. <u>ANALYSIS</u>

In their Motion, Defendants contend that Dr. Groehn's report is too broad, because it covers technology outside the scope of the asserted patents, namely battery life. Dkt. No. 123 at 14. To support this assertion, Defendants rely on *Fractus v. Samsung*, where economic expert testimony was stricken under *Daubert* because it was too broad. 2011 WL 7563820 (E.D. Tex, April 29, 2011). There, the asserted patents taught improvements to internal cell phone antennas.

3

Conversely, the expert testimony considered the value consumers place on external antennas, as compared to internal antennas. Defendants argue that *Fractus* is analogous, because Dr. Groehn's report covers battery life, rather than just the "switching" taught by the '181, '281, and '996 Patents. Finally, in their Reply, Defendants argue that Dr. Groehn's report is not based on "technical input," but rather on the expert opinion of others, and is thus impermissible. Dkt. No. 167 at 5.

In opposition, Plaintiff argues that *Fractus* is distinguishable, because saving battery life and automatic switching are core features of the inventions, as they are mentioned in all three asserted Patents' specifications. Dkt. No. 150 at 1. They argue that *Fractus* is distinct, because here, battery savings are a core benefit to the consumer justifying the inclusion of the accused features, rather than the irrelevant "external" antennas discussed by the expert in *Fractus*. Further, Plaintiff notes that Defendant's expert, Dr. Lanning, discusses automatic switching as a benefit to the '181 Patent. Finally, Plaintiff's Sur-Reply dismisses Defendant's "technical input" argument as directly contradicted by this Court's *Headwater v. Samsung* decision, which found that an expert can rely on the technical data of other experts, so long as the underlying data is admissible. 2024 WL 4712953 (E.D. Tex. Nov. 7, 2024).

The Court is not persuaded by Defendant's citation to *Fractus*. In *Fractus*, the court stuck expert testimony regarding an entirely different subject – whether consumers prefer internal or external cell phone antennas – whereas the damages were based on the estimated increase in profits for the patented improvements in internal antenna design. Here, the battery savings and network switching are core features of the '181, '281, and '996 Patents, given the mention in their preambles. Further, Plaintiff's expert used these battery life improvements as a proxy for how much consumers would pay for the accused improvements.

4

Finally, because this Court denied Defendant's Motion to strike Dr. Cole and Cooklev's reports, and found them admissible, the Court cannot accept Defendant's argument that this report does not rely on "technical input," or that the "technical input" it relies on is inadmissible.

Because Dr. Groehn's opinions use battery life to discuss the economic value of the accused instrumentalities, there remains no question of their admissibility, and the Court will deny Defendant's Motion to Strike.

### IV.  CONCLUSION

For the reasons discussed above, the Motion is **DENIED**.

**SIGNED this 1st day of February, 2026.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE