IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| VASU HOLDINGS, LLC, §<br>    *Plaintiff,* §<br>    v. §<br>    §<br>    §<br>SAMSUNG ELECTRONICS CO., LTD., §<br>SAMSUNG ELECTRONICS AMERICA, §<br>INC., §<br>    *Defendants.* § | Case No.  2:24-cv-00034-JRG-RSP |

## MEMORANDUM ORDER

Before the Court is Defendants' Motion to Strike the Opinions of Vasu's Damages Expert Jim W. Bergman. **Dkt. No. 126**. For the reasons discussed below, the Motion is **DENIED**.

### I.    BACKGROUND

Defendant Samsung seeks to strike portions of the report of Plaintiff's damages expert Jim W. Bergman. Bergman's report considers the approximate value of the asserted patents and ties them to accused features of Defendants' products. Dkt. No. 126-2. His report then calculates damages. Considerations in his calculation include Defendants' financial benefit, hypothetical negotiations, and the *Georgia Pacific* factors.

Mr. Bergman's Report considers the profit-sharing agreement between Samsung Electronics Corporation ("SEC") and Samsung Electronics America ("SEA"). *Id.* at ¶ 298. His analysis considers the differences between an agreement between internal affiliates, and an outside licensor, such as Vasu. *Id.*

### II.    LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product

of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while

2

exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

### III.   ANALYSIS

In their Motion, Defendants contend that Mr. Bergman's consideration of the profit-sharing agreement between SEC and SEA is "arbitrary and unreliable", because it is unrelated to the negotiations for a hypothetical license between Defendants and Plaintiff. Dkt. No. 126 at 1. Defendants argue that these reports rest on the expert's own speculation, and they are not sufficiently tied to the case. *Id.* at 6. To support this proposition, Defendants primarily rely on two cases. Defendants first cite to *Sonos v. Google* where an expert report was stricken for its lack of connection to the case. 2023 WL 3933071 (N.D. Cal. June 9, 2023). Defendants also cite to *Fundamental Innovation Sys. v. Anker Innovations Ltd.*, where an expert report was excluded because the report failed to connect its primary authority to the case's facts. 2025 WL 459916 (D. Del. Feb. 11, 2025). Defendants argue that in addition to the differences in parties to this agreement, the agreement is substantially different, because it lacks any conferral of Intellectual Property rights, exists primarily for tax reasons, includes non-accused products, and discusses other services to be performed between the parties. Dkt. No. 163 at 1-2.

In their response, Plaintiff argues that the SEC-SEA agreement is merely a "starting point" for Mr. Bergman's analysis, and that he considers numerous other factors when forming his opinions. Dkt. No. 149 at 4. Plaintiff argues that this agreement, the "only agreement in the record"

is relevant to his profit-sharing analysis because it illustrates the approximate "expectation" of profit between the parties and thus can stand in for negotiations with a third party. *Id.* at 6. Plaintiff cites to *Headwater Research v. Verizon* to support its proposition, that this agreement is merely a "starting point" to Mr. Bergman's analysis. *Id.* In its sur-reply, Plaintiff lists five examples of additional evidence Mr. Bergman considered in his analysis, and that Defendants' analysis failed to consider.[1] Finally, Plaintiff rejects Defendants' cited *Sonos* and *Droplets* cases as too extreme, because in both, there was either no connection, or "too great an analytical gap" between the expert's cited material and the case's facts. *Id.* at 7-8; *Droplets Inc. v. Yahoo! Inc.*, 2022 WL 2670163 (January 12, 2022).

Here, the Court finds Mr. Bergman's opinions sufficiently reliable for admission. While Mr. Bergman's  primary authority is the SEC-SEA agreement, his analysis does not stop at that agreement. Instead, this agreement forms the basis for considering further evidence, which he relies on to adjust the figures to his final conclusion. Defendants' cited caselaw is likewise not persuasive. In *Sonos*, the court rejected a damages apportionment analysis that relied on Google's 30% "cut" taken against sales in Google's own app store. The court reasoned that this analysis was inappropriate, because the 30% cut was effectively non-negotiable, and because app developers

---

[1] The evidence considered is:
- His analysis of the Georgia-Pacific Factors 4, 5, 6 and 13 (Opp. at 3-4);
- The parties' recognition "that the available incremental benefit calculated above would be unavailable to either party if no agreement was reached, thereby making each party worse off" (Dkt. No. 126-2 (Bergman Rpt.) ¶ 284; Ex. 372 (7/23/2025 Bergman Dep. Tr.) at 37:13-38:3);
- The SEC-SEA Distributorship Agreement as a means to understand the typical anticipation of SEC and SEA regarding profit sharing (Opp. at 8);
- His calculation of the gross margins of SEC and SEA for the Accused Products during the damages period (id.); and,
- His adjustments, such as noting specifically that Vasu and Defendants would consider "the resources necessary to commercialize the Accused Products" and therefore crediting commercialization efforts, allocating 10% of the revenue over the entire damages period to Defendants and recognizing that Defendants would be primarily responsible for commercializing Vasu's patents, and therefore awarding Defendants the majority of the incremental benefit (55%), as compared to Vasu (45%) (id. at 3). Dkt. No. 182 at 1.

and patent licensors enter negotiations with too disparate goals. Defendants' other cited case, *Droplets*, supports this contention, finding that an expert opinion is outside the realm of relevance when there is "too great an analytical gap between the data and opinion proffered." *Droplets*, 2022 WL 2670163 at *3. The relationship between the SEC-SEA agreement and the hypothetical negotiations between Plaintiff and Defendants does not form an insurmountable "analytical gap," because it forms the starting point for Mr. Bergman's analysis, rather than the sole basis for his conclusion. Like *Headwater v. Verizon*, where the report bridged the gap with further analysis and information, Mr. Bergman's report uses the SEC-SEA agreement to allocate profits between the parties. He then calculates the total damages, using separate information. Therefore, there exists no "analytical gap" between the SEC-SEA agreement sufficient to strike Mr. Bergman's report.

Finally, Defendants move to strike portions of Mr. Bergman's report that rely on Dr. Groehn's report. Because Defendants advance the same reasons in the Motion to Strike Dr. Groehn's report, and because the Court denied this Motion with respect to his "extra profit per unit" calculation, Defendants Motion to Strike cannot succeed on these grounds. Therefore, Defendants' Motion to Strike is likewise denied with respect to the portions of Mr. Bergman's report that rely on Dr. Groehn's report.

## IV.    CONCLUSION

For the reasons discussed above, Mr. Bergman's report is sufficiently reliable   Therefore, the Defendants' Motion to Strike is **DENIED**.

**SIGNED this 1st day of February, 2026.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE