IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| VASU HOLDINGS, LLC,<br>　　　　　　　*Plaintiff*,<br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA,<br>INC.,<br>　　　　　　　*Defendants*. | §<br>§<br>§<br>§  Case No. 2:24-cv-00034-JRG-RSP<br>§<br>§<br>§<br>§<br>§ |

**MEMORANDUM ORDER**

Before the Court is Samsung's *Daubert* Motion and Motion to Strike Expert Testimony of Dr. Todor Cooklev. **Dkt. No. 131**. For the reasons discussed below, the Motion is **DENIED**.

**I.　BACKGROUND**

Defendants seek to strike portions of the report of Plaintiff's infringement expert, Dr. Cooklev. Dr. Cooklev's report is relevant to the infringement determination for four asserted patents, U.S. Patent Nos. 8,886,181 ("the '181 Patent"), 10,206,154 ("the '154 Patent"), 10,368,281 ("the '281 Patent"), and 10,419,996 ("the '996 Patent"). Defendant's Motion seeks to strike his expert report with respect to the '181, '281, and '996 Patents. These patents teach different ways to switch between different wireless networks. For example, the '181 Patent teaches a method of simultaneously establishing connection to a second, stronger, network without losing connection to the first. Similarly, the '281, and '996 Patents include timers to "wake up" the second antenna after a specified period of time, and if certain conditions are met.

**II.　LEGAL STANDARD**

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product

1

of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while

exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

### III.   ANALYSIS

In their Motion, Defendants first contend that Dr. Cooklev's report improperly adds new infringement accusations through his identifications of new accused features. Dkt. No. 131 at 2. They argue that Dr. Cooklev's report is untimely, like the infringement allegations rejected by the Court in Plaintiff's June 18, 2025, Amended Infringement Contentions (Dkt. No. 100-1).[1] *Id*. For example, Defendants contend that Dr. Cooklev's report adds 68 accused "timers" to the 6 in the infringement contentions. *Id.* at 3. Defendants argue that this addition "flouts" EDTX Patent Rule 3-1(c), which requires plaintiffs to timely disclose infringement contentions. *Id.* at 10.

Defendants contend that Dr. Cooklev's joint infringement opinions should be stricken because they lack evidentiary support and misstate the law. *Id.* at 10. Defendants argue that Dr. Cooklev's joint infringement opinions do not cite any evidence, and are otherwise unrelated because different legal standards, entities, and timelines apply. *Id.* at 10-11. Defendants further argue that Dr. Cooklev's report misstates the law on § 271(a) (direct infringement) with respect to third parties. *Id.* at 12-13. They contend that Dr. Cooklev misstates the law on third-party joint infringement, because he mistakenly identifies the end users, rather than third parties, as the beneficiaries. *Id*. They further reason that Dr. Cooklev fails to establish that defendants "direct and

---

[1] In their Motion, Defendants concede that there is no overlap between the rejected amended infringement contentions and the new accused features in Dr. Cooklev's report. Dkt. No. 131 at 10.

control" the third parties in his demonstration that Defendant's products are interoperable with mobile networks.

Finally, Defendants argue that the portions of Dr. Cooklev's report that provide claim scope make improper claim construction arguments. Defendants argue that Dr. Cooklev construes the terms "sleep mode" and "active mode" to include limitations on power consumption. *Id.* at 15. They argue this is ultimately confusing to a jury.

In response, Plaintiff points to specific disclosures in the infringement contentions that map to Dr. Cooklev's report. They argue that infringement contentions need not disclose specific evidence or proof of infringement, unlike expert reports, which do require such specificity. They cite to *ROY-G-BIV Corp. v. ABB, Ltd.*, and add that what expert reports cannot add are additional infringement *theories*. 63 F. Supp. 3d 690, 699 (E.D. Tex. 2014). Plaintiff argues that Dr. Cooklev's report is proper because it merely adds support to the existing infringement theories, and does not advance any new theories *Id.* at 3.

Plaintiff argues that it properly disclosed the evidentiary support for the joint infringement theories during discovery. *Id.* at 12. It adds that the interrogatory responses provide the evidentiary support, and form Dr. Cooklev's evidentiary basis. Plaintiff argues that *Akamai Technologies v. Limelight Networks,* 797 F.3d 1020, 1022 (Fed. Cir. 2015), lays out the correct standard for joint infringement:

> Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity…Where more than one actor is involved in practicing the steps, a court must determine whether the acts of one are attributable to the other such that a single entity is responsible for the infringement. We will hold an entity responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise.

4

It adds that in a joint enterprise, four requirements must be met, including a "community of pecuniary interest." *Id*. at 1023[2]; Dkt. No. 151 at 13. It contends that because a court can consider the entire "community" for joint infringement, the "end user" beneficiaries are within the scope of the joint enterprise. Because their infringement is within the joint enterprise, Plaintiff argues that it can properly factor into a joint infringement analysis. Plaintiff argues that the close integration between Defendant and the network providers, including conditions on network configuration settings, indicates that Defendants "direct or control" the network providers. *Id.* at 14.

Finally, Plaintiff argues that Dr. Cooklev did not improperly construe claims. Instead, it contends he merely applied the plain and ordinary meaning of the terms. *Id.* at 15. It adds that Defendants do not argue that Dr. Cooklev's report departs from the terms' plain and ordinary meanings.

First, the Court finds persuasive Plaintiff's arguments that the additional accused features Dr. Cooklev's report discloses do not introduce any new infringement theories and are thus proper. Dr. Cooklev's report maps his accused features to the already disclosed infringement theories. Like *ROY-G-BIV*, Dr. Cooklev's report does not extend Plaintiff's case, and materially differs from Plaintiff's rejected infringement contentions, which accuse new products. Conversely, Dr. Cooklev's report clarifies which features within the already-accused devices infringe. Because Dr. Cooklev's report does not add new infringement theories, the Court is of the opinion that it should not be stricken on these grounds.

---

[2] Joint enterprise's four requirements are:
1. an agreement, express or implied, among the members of the group;
2. a common purpose to be carried out by the group;
3. a community of pecuniary interest in that purpose, among the members; and
4. an equal right to a voice in the direction of the enterprise, which gives an equal right of control. Restatement (Second) of Torts § 491 cmt. *c*.

The Court is also persuaded that Dr. Cooklev's report properly relates to Plaintiff's interrogatory responses, already disclosed in discovery, for joint infringement. Because end users benefit from the accused features, Dr. Cooklev's report properly states the law that end users can be beneficiaries for a joint enterprise. The Court is further persuaded that Dr. Cooklev's report properly states the law for joint infringement. Like *Akamai*, a joint enterprise exists between Defendant and the carriers, given the heavy integration and conditions on network access. This indicates the requisite level of control required to "direct or control" the network providers. Because this raises a factual dispute best left to the jury, and because Dr. Cooklev applied the correct legal standard, the Court is of the opinion that it cannot be stricken on these grounds.

Finally, the court is persuaded that Dr. Cooklev's report does not improperly perform claim construction. There, he merely read the claims to conclude that a "sleep" mode consumes less power than an "active" mode. Such a distinction is readily apparent to a person of ordinary skill. Because there is thus no claim construction, the Court is of the opinion that it should not be stricken on these grounds.

IV. **CONCLUSION**

For the reasons discussed above, the Defendants' Motion to Strike is **DENIED**.

SIGNED this 4th day of February, 2026.

*/s/ Roy S. Payne*
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE