[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| VASU HOLDINGS, LLC, a Texas Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean Corporation, and SAMSUNG ELECTRONICS AMERICA, INC., a New York Corporation,<br><br>Defendants. | Case No. 2:24-cv-00034-JRG-RSP<br><br>[redacted] |

**PLAINTIFF VASU HOLDINGS, LLC'S RENEWED MOTION FOR <u>JUDGMENT AS A MATTER OF LAW AND MOTION FOR A NEW TRIAL</u>**

[redacted]

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. The Court Should Enter JMOL Awarding Vasu $[redacted] Million in Damages .......... 2

B. In the Alternative, a New Trial on Damages is Warranted .......... 5

1. Ms. Rowe's Unreliable Testimony Should Have Been Excluded Under *Daubert* .......... 5

2. Ms. Rowe's Opinion is Unsupported By Sufficient Facts and Data on the Record .......... 7

a. Ms. Rowe Failed to Allocate License Fees Among the Licensed Patents .......... 9

b. Ms. Rowe and Mr. Lanning Failed to Establish Technical Comparability .......... 9

c. Ms. Rowe Failed to Consider the Circumstances of the Agreements .......... 10

d. Ms. Rowe Failed to Bridge the Temporal Gap Between the Agreements and the Hypothetical Negotiation .......... 12

3. The Jury's $3 Million Award is Unsupported and Against the Great Weight of the Evidence .......... 13

III. CONCLUSION .......... 15

[redacted]

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012)....12

*Apple Inc. v. Wi-LAN Inc.*,
25 F.4th 960 (Fed. Cir. 2022) ....9, 13

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993).... *passim*

*DP Sols., Inc. v. Rollins, Inc.*,
353 F.3d 421 (5th Cir. 2003) ....3, 4

*EcoFactor, Inc. v. Google LLC*,
137 F.4th 1333 (Fed. Cir.) ....6, 7, 8, 13

*Fenner Investments, Ltd. v. Hewlett-Packard Co.*,
No. 6:08-CV-273, 2010 WL 1727916 (E.D. Tex. Apr. 28, 2010)....12

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)....5

*Johnston v. Ferrellgas, Inc.*,
96 F.4th 852 (5th Cir. 2024) ....3

*KAIST IP US LLC v. Samsung Elecs. Co.*,
439 F. Supp. 3d 860 (E.D. Tex. 2020)....14

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
694 F.3d 51 (Fed. Cir. 2012)....10, 14

*Longitude Licensing Ltd. v. BOE Tech. Grp. Co.*,
No. 2:23-CV-00515-JRG-RSP, 2025 WL 2029871 (E.D. Tex. July 21, 2025) ....10

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009)....14

*MLC Intell. Prop. LLC v. Micron Tech., Inc.*,
10 F.4th 1358 (Fed. Cir. 2021) ....7

*Omega Pats., LLC v. CalAmp Corp.*,
13 F.4th 1361 (Fed. Cir. 2021) ....9

[redacted]

*Roland Corp. v. inMusic Brands, Inc.*,
No. 2023-1327, 2025 WL 926703 (Fed. Cir. Mar. 27, 2025)....................13

*Smith v. Transworld Drilling Co.*,
773 F.2d 610 (5th Cir. 1985)....................5

*Stanton v. Jarvis Christian Coll.*,
477 F. Supp. 3d 561 (E.D. Tex. 2020), *aff'd*, No. 20-40581,
2022 WL 738617 (5th Cir. Mar. 11, 2022)....................15

*Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*,
No. 3:90-CV-1590-H, 1995 WL 811944 (N.D. Tex. Aug. 28, 1995),
*aff'd*, 90 F.3d 1558 (Fed. Cir. 1996)....................14

*Threlkeld v. Total Petroleum, Inc.*,
211 F.3d 887 (5th Cir. 2000)....................3

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011)....................12

*VirnetX, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014)....................6

*Whitserve, LLC v. Comput. Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012)....................14

**Statutes**

35 U.S.C. § 284....................1, 14

**Other Authorities**

Federal Rule of Civil Procedure 50(a)....................3

Federal Rule of Civil Procedure 50(a)(1)....................2

Federal Rule of Civil Procedure 50(b)....................1, 15

Federal Rule of Civil Procedure 59(a)....................1, 15

Federal Rule of Civil Procedure 59(a)(1)(A)....................5

Federal Rule of Evidence 702....................2, 5, 13

[redacted]

## I. INTRODUCTION

Had the jury awarded Vasu Holdings, LLC ("Vasu") $300 million rather than $3 million, the Court would have undoubtedly set aside the award because the trial record provided no legally sufficient evidentiary basis for it. The principle of equal dignity requires the same result for the jury's $3 million award, which likewise lacks a legally sufficient evidentiary basis. Not a single expert, fact witness, or trial exhibit even suggested that a reasonable royalty would be $3 million. Just because the jury awarded less than one-tenth of Vasu's reasonable royalty does not make the award any more legally justified than if the jury had awarded ten times.

Vasu respectfully renews its motion under Federal Rule of Civil Procedure 50(b) for judgment as a matter of law awarding $[redacted] million in reasonable royalty damages for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.'s ("Defendants") infringement of U.S. Patent No. 8,886,181 ("the '181 Patent"). In the alternative, Vasu moves under Federal Rule of Civil Procedure 59(a) for a new trial on damages. The jury's $3 million award cannot be reconciled with the trial record, the Court's instructions, or the statutory floor requiring damages "in no event less than a reasonable royalty." 35 U.S.C. § 284.

The trial record supplied only one reliable damages calculation. Vasu's expert, Jim Bergman, applied the *Georgia-Pacific* hypothetical negotiation framework to Defendants' own financial and usage data and calculated a [redacted] million lump sum royalty. Defendants' damages expert, Julia Rowe, offered no competing figure. She testified on the record: "***That's not my role.***" Trial Tr.[1] at 933:11-13 (emphasis added). Instead, she offered only a ceiling of "no more than $6 million," derived from three Samsung agreements she never showed to be technically or

[1] All cited pages of the Trial Transcript ("Trial Tr.") are attached as Exhibit A to the Declaration of Jennifer Gilbert filed herewith.

[redacted]

economically comparable to the '181 Patent or to the April 2015 hypothetical negotiation date. *Id.* at 915:25-916:22. That ceiling was not based on any reliable evidence. It is a bare assertion disguised as expert opinion. The jury then awarded $3 million, despite the lack of any witness testimony or record evidence to support this figure. That verdict cannot stand.

Independent from the grounds for JMOL, the admission of Ms. Rowe's speculative and unreliable testimony regarding alleged comparable agreements, which should have been excluded under *Daubert* and Rule 702, warrants a new trial. That exclusion argument is not a prerequisite for JMOL. Even accepting Ms. Rowe's testimony as properly admitted, it cannot constitute substantial evidence of a reasonable royalty because she provided no meaningful basis for her "ceiling" opinion, and she disclaimed offering an affirmative damages opinion. On that basis alone, Mr. Bergman's $[redacted] million opinion stands as the only substantial evidence of a reasonable royalty before the jury. And even setting aside the JMOL ground, the jury's $3 million award lacks any evidentiary anchor.

For these reasons, either a judgment as a matter of law awarding Vasu [redacted] million in reasonable royalty damages for Defendants' infringement of the '181 Patent or a new trial limited to damages on the '181 Patent is appropriate.

## II. ARGUMENT

### A. The Court Should Enter JMOL Awarding Vasu [redacted] Million in Damages

The Court should enter JMOL because "no reasonable jury" would have "a legally sufficient evidentiary basis" to find a reasonable royalty other than the [redacted] million damages figure supported by Mr. Bergman's unrebutted methodology. Fed. R. Civ. P. 50(a)(1). Ms. Rowe conceded at trial that she was ***not*** offering an affirmative damages opinion:

> **Q:** So to be clear you actually didn't offer an opinion on what damages should be. Right?
>
> **A:** That's not my role.

[redacted]

Trial Tr. at 933:11-13. While Ms. Rowe disclaimed offering an affirmative damages opinion, she nonetheless offered a damages ceiling untethered to a reliable methodology which is not "substantial evidence" of a reasonable royalty sufficient to create a jury question. "Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Johnston v. Ferrellgas, Inc.*, 96 F.4th 852, 857 & n.15 (5th Cir. 2024) (quoting *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 891 (5th Cir. 2000)). A "mere scintilla of evidence is insufficient to present a question for the jury and there must be a conflict in substantial evidence to create a jury question." *DP Sols., Inc. v. Rollins, Inc.*, 353 F.3d 421, 427 (5th Cir. 2003) (citation and quotation marks omitted). Ms. Rowe's disclaimer that damages were "not [her] role" falls far short of that threshold.

Mr. Bergman's unrebutted testimony matters because Defendants did not present a competing damages case, leaving Mr. Bergman's opinion as the only opinion of record based on reliable principles and sound methodology. Trial Tr. at 574:4-7 (opining that a reasonable royalty of the '181 Patent is $[redacted] million). As Vasu argued in its Rule 50(a) oral motion, Mr. Bergman grounded his analysis in the patent statute and applied the well-established hypothetical negotiation framework, using the undisputed negotiation date of April 2015. *Id.* at 1042:7-15. His multi-step, economically grounded approach drew on the opinions of Vasu's technical experts, Drs. Goodrich, Cooklev, and Groehn, as inputs. *Id.* at 1042:15-25.

Dr. Goodrich testified regarding the technical advantages of the Asserted Patents, while Dr. Cooklev quantified the battery-life savings attributable to a device's use of a Wi-Fi network and explained how Defendants incorporated the patented technology into the Accused Products. Trial Tr. at 1042:19-25. Building on those technical opinions, Dr. Groehn designed a conjoint

[redacted]

survey that yielded a median extra profit per unit of $[redacted] for the network transition feature that Dr. Cooklev had described, which Mr. Bergman then used to isolate the footprint of the invention within the Accused Products. *Id.* at 1043:8-21. After crediting Defendants for research, development, and sales costs, Mr. Bergman arrived at an apportioned profit of $[redacted] per unit for Wi-Fi Calling. *Id.* at 1043:22-1044:13.

Mr. Bergman derived his royalty base from Defendants' own data, identifying [redacted] Accused Products sold during the damages period for the '181 Patent and apportioning that base using Defendants' usage data to [redacted] units. Trial Tr. at 1044:14-25. Relying on Defendants' [redacted] agreement, Mr. Bergman determined the parties would allocate [redacted] percent of the attributable profit to Vasu, yielding a per-unit royalty of $[redacted] for Wi-Fi Calling and a total reasonable royalty of $[redacted] million for the '181 Patent. *Id.* at 574:4-7, 1045:1-11.

While Ms. Rowe testified that a reasonable royalty should be no more than $6 million, that figure was not the product of any independent, affirmative damages methodology, much less, a reliable methodology. It was merely a ceiling derived from pointing to some license and purchase agreements and wholly unsupported by any reliable economic analysis—as detailed in §II.B.1 below. Because Ms. Rowe's opinions lack the analytical rigor necessary to constitute "substantial evidence" sufficient to create a jury question (*see DP Solutions*, 353 F.3d at 427), no reliable countervailing damages evidence was before the jury.

Accordingly, because Mr. Bergman's testimony constituted the ***only*** "substantial evidence" of a reasonable royalty before the jury, the Court should enter JMOL in favor of Vasu in the amount of [redacted] million for Defendants' infringement of the '181 Patent.

[redacted]

### B. In the Alternative, a New Trial on Damages is Warranted

A new trial on damages is warranted because the jury's $3 million damages award rests on the prejudicial admission of unreliable expert testimony and is unsupported by the great weight of the evidence. A court may grant such relief "for any reason for which a new trial has heretofore been granted in an action at law in federal court," including where the damages amount is inadequate, the jury verdict is against the weight of the evidence, or the trial was marred by prejudicial error. Fed. R. Civ. P. 59(a)(1)(A); *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612-13 (5th Cir. 1985) (affirming district court's conclusion that the jury's verdict was against the great weight of the evidence and ordering a new trial). Here, two independent grounds satisfy that standard. First, Ms. Rowe's $6 million rested on agreements with no analysis or reasonable basis to rely upon them, constituting prejudicial error that independently warrants a new trial. Second, her testimony at trial was so superficial and thin that there was no meaningful evidence before the jury from which to derive a $3 million award, rendering the verdict against the great weight of the evidence. As detailed below, Ms. Rowe cannot present a reliable damages calculation premised on willful blindness to the circumstances of these agreements. Each ground independently warrants a new trial.

#### 1. Ms. Rowe's Unreliable Testimony Should Have Been Excluded Under *Daubert*

Ms. Rowe's damages testimony regarding alleged comparable agreements was inadmissible and should have been excluded before trial. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993); Fed. R. Evid. 702. Expert opinions must be excluded where there is "simply too great an analytical gap between the data and the opinion proffered," and the only link between the expert's opinion and the data is the "*ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146-47 (1997) (affirming exclusion of expert testimony under abuse-of-

discretion review because the district court properly found the analytical gap between the data and the expert's conclusions to be too great); *see also VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014) (vacating damages award based on expert's unreliable damages testimony for failure to apportion properly). Because Ms. Rowe lacked any information regarding the circumstances of these lump sum agreements, she has no support to derive a specific per-unit royalty rate from them.

As Vasu explained in its *Daubert* motion (Dkt. No. 127), Ms. Rowe's opinion suffered from multiple independent deficiencies. Ms. Rowe relied on three Samsung agreements despite having no information regarding the circumstances surrounding the agreements. For example, there was no information regarding why the parties entered into the agreement, how the consideration for those agreements was determined, whether there was litigation, whether Defendants were practicing the patents, and what products might even be covered by the agreements. Dkt. No. 127 at 3, 5-7. The Federal Circuit in *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333 (Fed. Cir.) recently rejected the methodology Ms. Rowe disclosed in her expert report, holding that where there is no basis to "claim that the lump sum is based upon any particular royalty rate," the license "provides no support" for a reasonable royalty. *Id.* at 1341-43 (*cert. denied*, 146 S. Ct. 333 (2025)). Ms. Rowe also failed to account for critical differences between the agreements and the hypothetical negotiation, including: (i) the number of patents involved ([redacted] patents in the [redacted] Agreement and over [redacted] patents in the [redacted] Agreement, compared to Vasu's three-patent portfolio); (ii) the potential influence of litigation concerns, given that all three counterparties were [redacted] entities and the [redacted] Agreement incorporated a [redacted]; and (iii) the [redacted]-year temporal gap between the [redacted] agreements and the April 2015 hypothetical negotiation date. Dkt. No. 127 at 9-11. Third, Ms.

Rowe provided no meaningful basis to establish technological comparability between the agreement patents and the Asserted Patents, as there was no evidence that any of the purchased or licensed patents pertained to the Asserted Patents' technology of seamless network switching during an ongoing communication. *Id.* at 12. The Court's pre-trial denial of Vasu's *Daubert* motion was based on representations regarding the evidentiary foundation Ms. Rowe would present at trial. What she delivered at trial, however, was very distant from those representations, and the result confirms that her opinions were inadmissible.

### 2. Ms. Rowe's Opinion is Unsupported by Sufficient Facts and Data on the Record

Tellingly, after Vasu pointed out the issues with her baseless per-unit royalty opinion, Ms. Rowe did not attempt to present that opinion at trial. But this left Ms. Rowe without much to say at all. Ms. Rowe's opinions at trial thus suffered from numerous fatal flaws because they were "not based upon sufficient facts or data." *See EcoFactor*, 137 F.4th at 1338 (district court abused its discretion in allowing expert's damages opinion not based on sufficient facts or data). At trial, Ms. Rowe testified that a hypothetical negotiation would result in Defendants paying no more than $6 million as an allegedly reasonable royalty. Trial Tr. at 916:17-22. But that statement had no meaningful underpinnings. In a few brief pages of testimony, Ms. Rowe mentioned three Samsung agreements: (1) [redacted] Patent License Agreement; (2) [redacted] Patent Purchase Agreement; and (3) [redacted] Patent Purchase Agreement, and, without any meaningful technical or economic analysis or support, concluded that they were comparable to the hypothetical negotiation. Trial Tr. at 912:23-917:10; DX-0506; DX-0539; DX-0519. Ms. Rowe's testimony was a far cry from satisfying the requirement that "prior licenses or settlements need to be 'sufficiently comparable' for evidentiary purposes and any differences in circumstances must be soundly accounted for." *MLC Intell. Prop. LLC v.*

[redacted]

*Micron Tech., Inc.*, 10 F.4th 1358, 1375 (Fed. Cir. 2021) (citations omitted) (affirming *Daubert* exclusion of damages expert who relied on a 41-patent agreement when only one of those patents was at issue in the hypothetical negotiation).

Ms. Rowe merely testified that she "looked at the scope of what products would be covered under these agreements, and [] also looked at the time frame that these agreements covered relative to the seven-year period of the hypothetical license in this case." Trial Tr. at 916:5-9. But she made no meaningful effort to tie the agreements to the Accused Products or Asserted Patents. There was no testimony at trial that these agreements covered ***any*** of the Accused Products, much less phones, and Ms. Rowe confirmed that Mr. Lanning did not identify any phones that he thought were covered by any patents in the agreements. *Id.* at 935:20-23. Ms. Rowe also conceded that she did not know any of the circumstances surrounding the agreements, including why the parties entered into the agreement and what was involved in the negotiations. She confirmed that she did not know whether Defendants ever used any of the patents from the three agreements and that there had been no attempt to analyze the patents as they related to any of the Accused Products. *Id.* at 935:24-936:4; 937:3-6. Further, she never explained what she did with the information that she reviewed or what adjustments, if any, she made to arrive at her $6 million ceiling. Apart from *ipse dixit* assertions, Ms. Rowe provided no evidence, calculations, or analysis to support her opinion that the reasonable royalty should be "no more than $6 million." *Id.* at 912:23-917:3; *see also EcoFactor, Inc.*, 137 F.4th at 1346 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.") (citation omitted).

[redacted]

### a. Ms. Rowe Failed to Allocate License Fees Among the Licensed Patents

Another major flaw with Ms. Rowe's analysis is that she failed to allocate the value of the allegedly comparable agreements among the patents covered by each agreement. For the [redacted] purchase agreements, she presented no evidence about the patents involved beyond their quantity and Defendants' purchase price. Trial Tr. at 914:2-11. And for the [redacted] license agreement covering [redacted] patents, Ms. Rowe mentioned only one—the '[redacted] Patent – and offered no analysis to account for the vast disproportion between a [redacted] patent portfolio license and Vasu's three Asserted Patents. *Id.* at 913:9-23; 914:23-915:22; 934:14-936:4. Without any allocation, Ms. Rowe's reliance on the gross license and purchase fees as benchmarks for a three-patent hypothetical negotiation was analytically meaningless. The Federal Circuit has made clear that failure to "allocate license fees among the licensed patents covered by an agreement" and account for the full scope of patents included in the agreement warrants exclusion. *Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1380 (Fed. Cir. 2021) (vacating damages award where expert "failed to adequately account for substantial 'distinguishing facts' between the proffered licenses and a hypothetical negotiation") (citation omitted); *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 973-74 (Fed. Cir. 2022) (finding an abuse of discretion where the district court denied a motion for new trial on damages where the expert's opinion failed to address the extent to which each patent listed in the license contributed to its royalty rate).

### b. Ms. Rowe and Mr. Lanning Failed to Establish Technical Comparability

Ms. Rowe's allocation failure is compounded by the inadequacy of the technical comparability foundation on which she rested her analysis. Defendants presented no substantive evidence as to the technical comparability of the [redacted] and [redacted] agreements because

Defendants' technical expert, Mr. Lanning, could not even testify as to what technology those agreements related to or what patents were covered. Trial Tr. at 841:18-842:7. Mr. Lanning's trial testimony regarding the [redacted] agreement was also woefully insufficient. There, Mr. Lanning only addressed a ***single*** patent from the roughly [redacted] patents covered by the agreement, and his "analysis" consisted solely of reading two sentences from the patent's abstract. *Id.* at 820:9-23, 821:16-19. Ms. Rowe conceded that she was "not offering any technical opinions" and relied on Mr. Lanning for technical comparability, such that she could not attempt to patch the holes Mr. Lanning's lack of testimony left in her opinions. *Id.* at 924:1-6; 935:1-10. Even if Mr. Lanning had presented evidence of comparability to the jury, which he did not, Ms. Rowe also confirmed that no one parsed claim language to show that any patent in these agreements covered the Accused Products. *Id.* at 935:24-936:4.

The superficiality of Ms. Rowe's and Mr. Lanning's trial testimony does not meet the minimum threshold to present a license comparability analysis. *See LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012) ("[A] loose or vague comparability between different technologies or licenses does not suffice."). Courts in this district have excluded expert comparability opinions with similar lack of support. *Longitude Licensing Ltd. v. BOE Tech. Grp. Co.*, No. 2:23-CV-00515-JRG-RSP, 2025 WL 2029871, at *4 (E.D. Tex. July 21, 2025) (excluding damages expert's comparable-license testimony involving different patents and no claim analysis to support his opinions on comparability as "too conclusory to be helpful to the jury").

#### c. Ms. Rowe Failed to Consider the Circumstances of the Agreements

Additionally, Ms. Rowe failed to testify to the circumstances of the three agreements. She provided no evidence regarding why Samsung entered into the agreements or whether

[redacted]

Samsung believed the patents were valid and admitted she did not know whether Samsung used the patents. Trial Tr. at 935:24-936:4, 937:3-6. Defendants provided Mr. Bergman with "no information" about these circumstances either, limiting him to "the four corners of the agreement[s]." *Id.* at 537:20-538:10. Mr. Bergman acknowledged that this was "[not] enough" to assess comparability and that he "c[ould]n't build that bridge" from those real-world transactions to the hypothetical negotiation. *Id.* at 538:7-19. Ms. Rowe also failed to account for the potential litigation context of the agreements. The record contains no evidence addressing similarities or differences in the technologies, market conditions, or litigation posture at the time the agreements were executed. That last omission is particularly glaring because the trial exhibits themselves bear direct evidence of a litigation context that Ms. Rowe ignored entirely. All three agreements involved licensing-entity counterparties, yet Ms. Rowe offered no analysis of whether, or to what extent, litigation concerns influenced those agreements and made them unreliable benchmarks for a reasonable royalty.

Further, the [redacted] Agreement contains a release provision [redacted] DX-0519 at 2. The [redacted] Agreement similarly releases Defendants from [redacted] DX-0506 at 4-5. And the [redacted] Agreement expressly conveys rights to Defendants for [redacted] of the purchased patents. DX-0539 at 2. Ms. Rowe did not address any of these release provisions at trial, nor did she analyze whether they indicated that the agreements were motivated by the desire to extinguish actual or threatened litigation liability rather than by an arms-length assessment of patent value. Nor did she analyze whether Defendants used or intended to use the patents at issue in the agreements or the parties

[redacted]

to the agreements. The failure to grapple with these provisions renders her comparability analysis methodologically indefensible. *See, e.g., Fenner Investments, Ltd. v. Hewlett-Packard Co.*, No. 6:08-CV-273, 2010 WL 1727916, at *1-3 (E.D. Tex. Apr. 28, 2010) ("[R]oyalties paid to avoid litigation are not a reliable indicator of the value of a patent, and should therefore be disregarded when determining reasonable royalty rates.").

#### d. Ms. Rowe Failed to Bridge the Temporal Gap Between the Agreements and the Hypothetical Negotiation

Ms. Rowe also failed to account for the [redacted]-year temporal gap between the three agreements and the hypothetical negotiation date. All three agreements were executed in [redacted]—[redacted] years ***after*** the hypothetical negotiation date of April 2015. Ms. Rowe offered no testimony or analysis to account for this difference or to explain why agreements executed in [redacted] would be probative of a hypothetical negotiation occurring in April 2015, despite the potential for material changes in market conditions, technology scope, and the competitive landscape during that period. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1332-33 (Fed. Cir. 2012) (precluding damages expert from relying on agreement executed four years after the hypothetical negotiation date without adequate justification for the temporal gap). Here the gap is [redacted] years, making the case for exclusion even more compelling. The failure to bridge this [redacted]-year gap independently renders Ms. Rowe's methodology unreliable.

Further, Defendants offered no substantive analysis under any of the *Georgia-Pacific* factors to bridge the gap between the three Samsung agreements and the hypothetical negotiation. The only evidence Defendants put forward was Ms. Rowe's passing assertion that what Defendants paid under those agreements "are directly relevant to Georgia-Pacific factor No. 2." Trial Tr. at 916:23-917:3; *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) (finding mere recitation of the *Georgia-Pacific* factors without substantive

[redacted]

analysis is insufficient). Defendants otherwise presented no analysis of these three agreements under any of the remaining *Georgia-Pacific* factors. *See Apple*, 25 F.4th at 974 (remanding for new trial on damages where methodological and factual errors in analyzing comparable license agreements rendered the expert's opinion "untethered to the facts of this case").

Ms. Rowe's testimony that the reasonable royalty should be "no more than $6 million" is the classic *ipse dixit* that *Daubert* and Rule 702 are designed to exclude because she offered no supporting evidence, calculation, or analysis. *See EcoFactor*, 137 F.4th at 1346-47 (finding prejudicial error in the failure to exclude unreliable damages expert testimony). That error mattered: Ms. Rowe's unsupported ceiling was the only record evidence Defendants offered to resist Mr. Bergman's [redacted] million opinion, and the jury's $3 million award demonstrates that it relied on speculation untethered from a reliable damages methodology. A new trial is therefore warranted. *See Roland Corp. v. inMusic Brands, Inc.*, No. 2023-1327, 2025 WL 926703, at *12 (Fed. Cir. Mar. 27, 2025) (granting new trial where one of expert's alternative damages calculations was flawed and the jury could have accepted the flawed approach); *EcoFactor*, 137 F.4th at 1347 (remanding for new trial on damages where district court abused its discretion by denying *Daubert* motion).

### 3. The Jury's $3 Million Award is Unsupported and Against the Great Weight of the Evidence

The jury's $3 million verdict is not merely inadequate; it cannot be reconciled with the record. Vasu's expert supplied a [redacted] million reasonable-royalty calculation. Defendants' expert did not offer an affirmative damages opinion and testified only that damages should be "no more than $6 million." The jury awarded $3 million, but that figure is arbitrary as there was no reliable trial testimony or calculation that would produce a $3 million reasonable royalty. No agreement in evidence was $3 million. The award therefore is the product of speculation rather

[redacted]

than adjudication. *LaserDynamics, Inc.*, 694 F.3d at 81 (remanding for a new trial on damages where the jury's award of a reasonable royalty "was arbitrary and speculative"); *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 33 (Fed. Cir. 2012) (remanding for a new trial on damages where an expert's cursory testimony regarding comparable licenses was "conclusory, speculative and, frankly, out of line with economic reality").

Because the jury arrived at a number untethered to any witness's testimony or any calculation in evidence, the verdict was the product of speculation rather than a principled application of the reasonable royalty framework. The evidence of record is neither sufficiently comparable nor presented in a manner allowing the jury to award the damages it did. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1335 (Fed. Cir. 2009) (vacating damages award unsupported by substantial evidence and based on speculation for a new trial). Because no evidence in the record supports a $3 million award, the jury verdict is against the great weight of the evidence, and a new trial is required. *See KAIST IP US LLC v. Samsung Elecs. Co.*, 439 F. Supp. 3d 860, 887 (E.D. Tex. 2020) (finding new trial on damages was warranted where the jury's damages verdict was not supported by the evidence).

Moreover, because Ms. Rowe's testimony lacks the analytical rigor required for a reliable damages calculation, the $3 million award necessarily is a product of speculation and unreliable testimony. The jury had no evidentiary basis for a $3 million figure, and that award fails to constitute "damages adequate to compensate for the infringement" as required by § 284. The verdict thus reflects the jury's failure to follow the Court's instructions on "the measure of damages" and "how to calculate reasonable royalty damages." Trial Tr. at 1119:15-1126:7; *see also Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*, No. 3:90-cv-1590-H, 1995 WL 811944, at *9 (N.D. Tex. Aug. 28, 1995) (granting new trial where jury failed to follow law on

[redacted]

damages outlined in jury instructions), *aff'd*, 90 F.3d 1558 (Fed. Cir. 1996); *Stanton v. Jarvis Christian Coll.*, 477 F. Supp. 3d 561, 574 (E.D. Tex. 2020) ("A court 'may order a new trial if . . . a jury fails to follow instructions.'") (citation omitted), *aff'd*, No. 20-40581, 2022 WL 738617 (5th Cir. Mar. 11, 2022).

## III. CONCLUSION

For the foregoing reasons, Vasu respectfully requests that the Court enter judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) in favor of Vasu on damages in the amount of [redacted] million, representing the reasonable royalty for Defendants' infringement of the '181 Patent as established at trial, or, in the alternative, order a new trial on damages pursuant to Federal Rule of Civil Procedure 59(a) because the jury's $3 million award is unsupported by substantial evidence, was based upon the prejudicial admission of Ms. Rowe's unreliable and deficient testimony, and is against the great weight of the evidence.

Respectfully submitted,

Dated: July 30, 2026

By: /s/ Paul J. Andre

Paul J. Andre (CA SBN 196585)
Lisa Kobialka (CA SBN 191404)
James Hannah (CA SBN 237978)
Kristopher Kastens (CA SBN 254797)
Michael H. Lee (*pro hac vice*)
Jennifer L. Gilbert
Melissa T.G. Brenner (*pro hac vice*)
Charles Lee (*pro hac vice*)
Girija Gaur (*pro hac vice*)
Aakash Jariwala (*pro hac vice*)
HERBERT SMITH FREEHILLS
KRAMER (US) LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 752-1700
paul.andre@hsfkramer.com
lisa.kobialka@hsfkramer.com
james.hannah@hsfkramer.com
kris.kastens@hsfkramer.com
michael.lee@hsfkramer.com
jennifer.gilbert@hsfkramer.com

[redacted]

missy.brenner@hsfkramer.com
charles.lee@hsfkramer.com
girija.gaur@hsfkramer.com
aakash.jariwala@hsfkramer.com

Ken Mueller (*pro hac vice*)
Carlos J. Tirado (*pro hac vice*)
HERBERT SMITH FREEHILLS
KRAMER (US) LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
ken.mueller@hsfkramer.com
carlos.tirado@hsfkramer.com

Elizabeth L. DeRieux (Bar No. 05770585)
S. Calvin Capshaw (Bar No. 03783900)
Capshaw DeRieux LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: (903) 845-5770
ederieux@capshawlaw.com
ccapshaw@capshawlaw.com

*Attorneys for Plaintiff*
Vasu Holdings, LLC

[redacted]

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2026, the foregoing document was served on all counsel of record via electronic mail.

*/s/ Paul J. Andre*
Paul J. Andre

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is being filed under seal pursuant to the Protective Order entered in this matter.

*/s/ Paul J. Andre*
Paul J. Andre